Kathryn JORDAN, Plaintiff–Appellant,

v.

BATES USA, Bates Alliance/Manhattan Travel, Bates Advertising Holdings, Inc., formerly known as AC & R Advertising, Inc., Bates Advertising Holdings (USA) Inc., Defendant–Appellees.

No. 99–9153.

United States Court of Appeals, Second Circuit.

Feb. 16, 2001.

Scott T. Horn, Mischel Neuman & Horn, P.C., New York, NY, for appellant.

Gregory W. Homer, Swidler Berlin Shereff Friedman, LLP, Washington, DC, for appellees.

Present GRAAFEILAND, CALABRESI and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DE-CREED that the judgment of the district court be and it hereby is AFFIRMED.

## I. BACKGROUND

Kathryn Jordan ("plaintiff") was hired as a Vice President by AC & R Advertising, Inc. ("AC & R") in January 1994. Plaintiff, who was 42 years old when she was hired, allegedly suffers from Multiple Sclerosis and walks with a cane. In the Summer of 1994, AC & R changed its name to Bates Advertising Holdings, Inc., moved its offices into a building that already housed an affiliated company called Bates USA, and commenced a cost-cutting program focused on utilizing Bates USA's infrastructure (including account planning, accounting, and print production functions) to replace its own.[1] Sometime over the

---

1. As a result of this effort, AC & R shrunk from having over 150 employees in 1994 to having only 21 employees in July 1998.

following winter, plaintiff was fired and the work she had done was thereafter performed by a 26 year old female Bates USA employee who had no disability. Plaintiff claims she was discriminatorily fired because of her gender, disability, and age.

Plaintiff visited the Manhattan office of the Equal Employment Opportunity Commission ("EEOC") on December 5, 1995, and on that same day completed a signed but unsworn Intake Questionnaire indicating the general nature of her complaint. Plaintiff did not, however, file a notarized, sworn charge with the EEOC until January 30, 1996. The EEOC investigated plaintiff's complaint and concluded that there was no probable cause for plaintiff's claims, and it issued plaintiff a right to sue letter on May 2, 1996.

Plaintiff thereupon brought suit in the United States District Court for the Southern District of New York, alleging that she had been terminated in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.*, the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq.*, and various New York State and New York City human rights laws.[2] Defendants moved for summary judgment on all counts, and the district court (Rakoff, *D.J.*) granted defendants' motion with respect to plaintiff's federal claims and declined to exercise supplemental jurisdiction over plaintiff's state and city claims, which it dismissed without prejudice.

Summary judgment against plaintiff's Title VII and ADA claims was granted on the grounds that plaintiff had failed adequately to present these to the EEOC within the 300 day time limit imposed on such claims, *see* 42 U.S.C. § 2000e–5(e)(1) (Title VII) & 42 U.S.C. § 12117(a)(ADA). In reaching this conclusion, the district court treated plaintiff's discrimination claims as accruing on March 11, 1995, when plaintiff claimed to have received a copy of the Termination Agreement and General Release that Bates Advertising Holdings, Inc. required her to sign in consideration for receiving her severance package. Plaintiff's December 5, 1995 Intake Questionnaire was completed within the required 300 days of this date. But, the district court noted, both Title VII and the ADA require that a "writing under oath" be filed with the EEOC within the 300 days. *See* 42 U.S.C. § 2000e–5(b) (Title VII) & 42 U.S.C. § 12117(a)(ADA). And plaintiff's notarized, sworn charge was not filed until January 30, 1996, 325 days after March 11, 1995. This, the court below concluded, rendered plaintiff's Title VII and ADA claims untimely. Finally, the district court held that no equitable tolling of the 300 day period applied to plaintiff's delay in filing the sworn charge.

Although the ADEA also imposes a 300 day time limit for filing a complaint with the EEOC, *see* 29 U.S.C. § 626(d)(2), the ADEA does not require that *sworn* charges be filed with the EEOC. The district court therefore treated plaintiff's December 5, 1995 Intake Questionnaire as an adequate and timely filing and did not grant summary judgment against plain-

---

**2.** Plaintiff's complaint also alleges that she was discriminatorily denied a promotion in the Spring of 1994. Plaintiff contends that the person awarding the job, after being "rude," "patronizing," "disrespectful," and "condescending," "pointedly" told her that he "had a man in mind for the job." Because

this claim unquestionably accrued before plaintiff's discriminatory termination claim, the argument below demonstrating that the latter claim is untimely applies, *a fortiori*, to the former, which therefore demands no separate treatment in the present context.

tiff's ADEA claim on timeliness grounds. Nevertheless, the district court found that plaintiff "utterly failed to adduce competent evidence sufficient to cast in doubt defendant's evidentiary showing that plaintiff's termination was simply the result of her position being eliminated as a cost-cutting measure that attended the integration of AC & R Advertising with Bates Advertising Holdings." Accordingly, the district court also granted summary judgment in favor of defendants on plaintiff's ADEA claim.

Plaintiff appeals each of these findings. First, plaintiff argues that the district court erred in concluding that the unsworn Intake Questionnaire she completed on December 5 was inadequate as a "charge" under Title VII and the ADA. Plaintiff argues that her failure to verify the Intake Questionnaire was merely a technical defect that was retroactively cured by the January 30 sworn submission.[3] Second, plaintiff argues that even if the Intake Questionnaire did not constitute an adequate filing with the EEOC, the district court erred in failing to apply equitable tolling to her case. And third, plaintiff argues that the district court erred in finding that she had failed to adduce enough

evidence of age discrimination to survive summary judgment on her ADEA claim.

## II. DISCUSSION

 In deciding this appeal, we need not confine our analysis to the district court's opinion, but may instead affirm the district court's grant of summary judgment on any ground supported by the record. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997). Furthermore, it is well settled that "the proper focus [in an employment discrimination case] is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful," *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and therefore that "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect." *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985). Indeed, we have expressly stated that "[t]he 300 day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge" and that "[t]he notice may be oral." *Miller v. International Tel. and*

---

**3.** In presenting this argument, plaintiff points to an EEOC regulation that states that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge," 29 C.F.R. § 1601.12(b), and asks us to take sides in a seeming Circuit split concerning whether or not the position taken by the regulation is sustainable. *Compare Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir.1991) ("[A]n intake questionnaire which is later verified may be sufficient to constitute a charge in some circumstances.") *with Edelman v. Lynchburg College*, 228 F.3d 503, 508 (4th Cir.2000) ("[b]ecause a charge requires verification, and because a charge must be filed within the limitations period, it follows that a charge must be verified within the limitations

period," so that "to the extent that the regulation [29 C.F.R. § 1601.12(b) ] permits a charge to be verified after the expiration of the limitations period, it thwarts the plain language of Title VII [and, by the same token, of the ADA]" (internal citations to Title VII omitted)).

Because we decide this case on other grounds, *see infra*, we decline to reach this issue. We note, however, that a Second Circuit case that addressed the question suggests, albeit only in a related context and in dicta, that 29 C.F.R. § 1601.12(b) should be read to treat failure to swear a charge as a technical defect curable by amendment and should at least in some circumstances be deferred to by the courts. *See EEOC v. Sears, Roebuck and Co.*, 650 F.2d 14, 18 (2d Cir.1981).

*Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.1985). *See also Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 855 (3d Cir.2000); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir.2000). Accordingly, the 300 day limitations period for filing plaintiff's discrimination claims began to run not, as the district court assumed, on March 11, 1995 (when plaintiff allegedly received the Termination Agreement and General Release), but earlier (when plaintiff was first clearly made aware of her forthcoming termination).

Often, such a date is subject to doubt. But in the case before us, it is uncontested that plaintiff's supervisor Douglas Fidoten ("Fidoten") informed plaintiff on December 19, 1994 that he had decided to terminate her employment and that plaintiff sent a reply memorandum discussing her termination on the same day. Furthermore, plaintiff testified at her deposition that Fidoten informed her of her termination "sometime in January [1995]," and that she met with a member of the Bates Advertising Holdings, Inc. board of directors on January 6, 1995 to discuss the decision to terminate her and, at this meeting, even aired her belief that the decision was discriminatory. It is also uncontested that plaintiff sent Fidoten a second memorandum on January 9, 1995 stating "it is my understanding that you intend to terminate me at the end of this month." And finally, it is undisputed that plaintiff sent Fidoten yet another memorandum on February 7, 1995 "to confirm the discussions regarding my separation from Bates Alliance." This uncontested evidence reveals that "the date [plaintiff] receive[d] notice of the allegedly discriminatory decision," *O'Malley*, 758 F.2d at 820, to terminate her was perhaps as early as December 19, 1994, and certainly no later than February 7, 1995.[4]

Even counting from this last date, the 300 day period for filing plaintiff's EEOC charge expired on December 4, 1995, the day before plaintiff first arrived at the EEOC office and completed her Intake Questionnaire. Accordingly, quite apart from the question of the adequacy of plaintiff's unsworn Intake Questionnaire, none of plaintiff's Title VII, ADA, or ADEA discriminatory termination claims was timely filed with the EEOC, and all three claims must be rejected as untimely.[5]

## III. CONCLUSION

We therefore AFFIRM the judgment of the district court granting summary judgment for defendants on plaintiff's federal claims. In addition, we AFFIRM the district court's dismissal of plaintiff's remaining state and city law claims without prejudice. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

4. Subsequent to these admissions and depositions plaintiff has made statements suggesting that she was unaware that she would not be retained until she received a copy of a "Termination Agreement and General Release" from defendants on March 11, 1995. But these statements are not enough to avoid summary judgment. *See, e.g., Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir.2000) ("[I]n opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the fact.").

5. Similarly, plaintiff's principal arguments for equitable tolling of the 300 day limitations period, since they rely on the circumstances surrounding her completion of the EEOC Intake Questionnaire on December 5, 1995, no longer apply once it is recognized that this filing was itself untimely.